IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KIWI Intellectual Assets Corporation,<br><br>Plaintiff,<br>v.<br><br>Walmart Inc., and<br>Wal-Mart Stores Texas, LLC,<br><br>Defendants. | Civil Action No. 2:26-cv-01055<br><br><br><br><br>**Jury Trial Demanded** |

**Complaint for Patent Infringement**

Plaintiff KIWI Intellectual Assets Corporation brings this action for patent infringement against Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC.

**The Parties**

1. Plaintiff KIWI Intellectual Assets Corporation ("KIWI") is a foreign corporation organized under the laws of Taiwan with a principal place of business at 8.F-2, Number 1, Wuquan 1st Road, Xinzhuang District, New Taipei City 248022, Taiwan (Republic of China).

2. Defendant Walmart Inc. is a Delaware Corporation with a principal place of business at 702 Southwest 8th Street, Department 8687, Bentonville, Arkansas 72716.

3. Defendant Walmart Inc. may be served through its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4. Defendant Walmart Inc. has maintained an active Texas business registration since 1974 under SOS File Number 0003668006 and has the right to transact business in Texas.

5. Defendant Wal-Mart Stores Texas, LLC is a Delaware limited liability company with a principal place of business at 1 Customer Drive, MSC 0500, Bentonville, Arkansas 72716.

6. Defendant Wal-Mart Stores Texas, LLC has maintained an active Texas business registration since 2007 under SOS File Number 0800834865 and has the right to transact business in Texas.

7. Defendant Wal-Mart Stores Texas, LLC may be served through its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

8. Defendants are part of a global brick-and-mortar and online retail conglomerate that operates under the brand name “Walmart.” On information and belief, Defendant Wal-Mart Stores Texas, LLC is a wholly owned subsidiary of Defendant Walmart Inc. On information and belief, Defendant Walmart Inc. and its subsidiaries and affiliates, including Defendant Wal-Mart Stores Texas, LLC, operate as one unified corporate entity to consumers, investors, and the public and are thus alter egos of each other for purposes of jurisdiction, venue, and ultimate liability here. This Complaint therefore refers to the named Walmart Defendants and their other subsidiaries and affiliates collectively as “Walmart.”

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this Complaint alleges patent infringement and thus presents a federal question under 35 U.S.C. §§ 271, 281, 284, and 285.

10. This Court has personal jurisdiction because Defendants conduct substantial business and have purposefully availed themselves of conducting such business in Texas and in this District. Defendants’ conduct in Texas and this District, directly or through intermediaries, includes the infringing conduct alleged in this Complaint and regularly doing or soliciting

business, engaging in other persistent courses of conduct, and deriving substantial revenue from providing goods and services to persons in Texas. “Texas has been a key part of Walmart’s journey from small-town grocery to global retailer.” https://corporate.walmart.com/about/location-facts/united-states/texas (last visited Nov. 20, 2026).

11. Walmart advertises that it operates 595 retail locations in Texas, including 395 Walmart Supercenters and 82 Sam’s Club stores where Walmart sells products that infringe KIWI’s asserted patent. *See id.* Walmart advertises that it operates 22 supply chain distribution centers in Texas where, on information and belief, Walmart imports, stores, sells from, and distributes to retail stores and consumers products that infringe KIWI’s asserted patent. *See id.* Walmart touts that it employs more than 178,000 people in Texas. *See id.*

12. On information and belief, Texas represents Walmart’s largest and most important U.S. market. Walmart operates more than 5,200 retail locations nationwide. *See* https://corporate.walmart.com/about/location-facts/united-states (last visited Nov. 20, 2026). Walmart’s Texas presence dwarfs its next largest state by store count—Florida, with 389 locations—and nearly doubles its 302 locations in California. *See id.* Walmart operates more locations in Texas than in the entirety of either the Pacific or the Mountain time zones. *See id.*

13. On information and belief, Walmart recognizes substantial revenue from its business operations in Texas and in this District. As reported in Walmart’s most recent 10-K, its U.S. sales exceeded $482 billion in FY2026 with more than $132 billion in gross profit. *See, e.g.*, https://stock.walmart.com/sec-filings/all-sec-filings/content/0000104169-26-000055/wmt-20260131.htm (last visited Nov. 20, 2026). Walmart recognizes so much of this revenue from sales in Texas and in this District, including sales of products that infringe KIWI’s asserted patent, that it paid more than $668 million in state and local taxes in Texas in FY2026 and

collected more than $2.3 billion in sales taxes in Texas in FY2026. *See* https://corporate.walmart.com/about/location-facts/united-states/texas (last visited Nov. 20, 2026).

14. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendants maintain regular and established places of business in this District and have committed acts of patent infringement in this District. While it has committed acts of infringement, Walmart has maintained regular and established places of business throughout this District, including five locations within 25 miles of this Court's Marshall Courthouse. *See* https://www.walmart.com/store-finder?location=75670&city=&state=&keyword=75670 (last visited Nov. 20, 2026).

15. Defendants operate at least six regular and established places of business in this District within a short drive of this Court's Marshall courthouse:

- 1701 East End Boulevard North in Marshall, Texas 75670;
- 515 East Loop 281 in Longview, Texas 75605;
- 4006 Estes Parkway in Longview, Texas 75603;
- 2440 Gilmer Road in Longview, Texas 75604;
- 3812 Gilmer Road in Longview, Texas 75604; and
- 4609 Northwest Loop 436 in Carthage, Texas 75633.

*See id.*

16. According to Anderson County property tax records, Defendant Walmart Inc. itself or through a subsidiary owns and operates a distribution center in this District at 14863 FM-645 in Palestine, Texas 75803. On information and belief, Defendants distribute products and services that include products accused of infringement to retailers and customers in this District from at least this distribution center in this District.

17. According to Collin County property tax records, Defendant Walmart Inc. also owns about $14 million worth of business personal property in this District at 8375 Dominion Parkway in Plano, Texas 75024. On information and belief, Defendants operate a data center here from which they market and sell products that include products accused of infringement.

18. At least a portion of Defendants' infringement of KIWI's asserted patent occurs within this District through Defendants' sales, offers for sale, importation, and use of infringing products and services in this District, and Defendants' introduction of infringing products and services into the stream of commerce knowing they would be sold or used in this District, including at the retail, data center, and distribution center locations in this District named above.

**KIWI's History as an Innovator of Electrical Connector Technology**

19. KIWI is a technology company founded by a prolific inventor, Chou Hsien "Terry" Tsai. KIWI's patented innovations strive to simplify connections between electronics components. Mr. Tsai has spent more than 30 years engaged in the research and design of electronic connectors and related electronic products. Mr. Tsai applies a manufacturer's perspective to product design, focusing on reducing production costs while enhancing overall product quality.

20. Mr. Tsai protects his innovative products in part by pursuing and obtaining many patents that cover various inventive concepts embodied by his products. Mr. Tsai has been awarded more than 90 patents in the United States alone.

21. In the early 2000s, Mr. Tsai began developing technologies to address the connectivity and usability issues presented by the current state of the art connectors—*i.e.*, the sockets and plugs needed to integrate with them.

22. Mr. Tsai invested substantial time and resources in developing improved socket and connector—*i.e.*, plug—designs, which are protected by U.S. and foreign patents.

23. A widely used transmission specification for sockets and transmission cables, which typically terminate in a plug that connects to a socket, is the Universal Serial Bus (USB) socket and cable systems. USB consists of a set of industry standards, the first of which was published in 1996, that defines cables, connectors, and protocols for connection, communication, and power supply between and among personal computers and other electronic devices.

24. Mr. Tsai sought to improve existing USB socket designs to address their key shortcomings, such as the well-known frustration experienced by USB-A connector users that the USB-A plug can only be inserted into the receiving socket in one orientation.

25. Recognizing these issues and equipped with his expertise, Mr. Tsai sought to and did develop a socket structure that would allow a USB plug to be normally and oppositely inserted into a receiving socket to create an electrical connection between the various connectors in a simple, easy, and reversible manner.

**KIWI's Asserted U.S. Patent No. RE50,307**

26. U.S. Reissued Patent No. RE50,307, titled "Socket Structure with Duplex Electrical Connection," issued on February 18, 2025, and identifies Chou Hsien Tsai as sole inventor ("RE307 patent"). A true and correct copy of the RE307 patent accompanies this Complaint as Exhibit A.

27. KIWI owns all right, title, and interest in the RE307 patent by assignment with full and exclusive enforcement rights, including the right to collect present, past, and future damages. The chain of title is recorded in the USPTO Assignment Database, including at Reel/Frame Nos. 051885/0765, 053711/0762, and 067400/0652.

28. In broad strokes, the RE307 patent discloses innovative socket structures with duplex electrical connections. These inventions allow users to conveniently and easily reversibly connect USB-C connectors.

29. The inventions described in the RE307 patent address deficiencies with prior art sockets and plugs, such as the preexisting USB-A socket and plug design. To illustrate, the RE307 patent described the inconvenience associated with these prior art sockets and plugs:

> Only one surface of the USB plug has one row of connection terminals. So, one surface of a tongue of the current USB socket has one row of connection terminals. In use, the USB plug has to be correctly inserted so that the connection terminals of the USB plug and the USB socket may be electrically connected together.
>
> In order to ensure the inserted USB plug to be electrically connected to the USB socket, the USB plug and socket have mistake-proof designs. That is, when the USB plug cannot be oppositely inserted, the user has to turn the USB plug and then insert the USB plug so that the electrical connection may be ensured after the insertion.
>
> The user usually randomly inserts the USB plug into the USB socket. So, the possibility of incapable of inserting the USB plug reaches 50%. The user often has to insert the USB plug twice in an inconvenient manner.

Ex. A at 1:42-55.

30. The RE307 patent describes various embodiments of addressing this and other deficiencies in the prior art. As an example, Figures 52 and 53 show an embodiment of a socket structure that "allows the plug to be inserted normally and oppositely." *Id.* at 12:65-67.



FIG. 53
FIG. 52

31. Figure 37 shows the front view of another embodiment of a socket structure described in the RE307 patent. Like the socket structure depicted in Figures 52 and 53, this embodiment also “allows a plug to be normally and oppositely inserted for connection” and shows a preferred reversible electronic connection configuration. *Id.* at 10:57-59.



FIG. 37

32. Figures 40 and 41 depict usage states for the embodiment in Figure 37. Figure 40 shows the connection terminal of the plug inserted upwardly into the connection slot, while

Figure 41 shows the connection terminal inserted downwardly into the connection slot. Ex. A at 11:51-67. This embodiment allows "bidirectional insertion." *Id.* at 12:1-3.



FIG. 40



FIG. 41

33. The RE307 patent's claims are similarly generally directed to innovative socket structures that address various deficiencies in prior art sockets. Claim 34 is illustrative:

> A socket structure with duplex electrical connection, the socket structure comprising:
>
> a plastic base;
>
> a connection slot, which is disposed in front of the plastic base and configured to be connected to a plug having at least one row of connection terminals;
>
> a tongue, which has a first surface with grooves, and a second surface with grooves, the second surface disposed opposite the first surface, the tongue being disposed on one end of the plastic base and within the connection slot, such that chambers of the connection slot on two sides of the tongue

allow the plug to be normally and oppositely inserted and positioned into the connection slot;

at least one row of first contacts separately arranged on the first surface of the tongue, wherein each of the first contacts is electrically connected to a respective first pin extending out of the plastic base; and

at least one row of second contacts separately arranged on the second surface of the tongue, wherein:

each of the second contacts is electrically connected to a respective second pin extending out of the plastic base;

the socket structure is operative to simultaneously electrically connect via the first and second contacts;

the at least one row of first contacts has a functional reverse mirror configuration relative to the at least one row of second contacts, and the socket structure is thereby configured for two separate operational states:

a first operational state when the plug is normally inserted into the connection slot with the at least one row of connection terminals of the plug facing the second surface of the tongue, the at least one row of connection terminals of the plug are electrically connected to the at least one row of second contacts and the tongue is disposed within the connection slot, wherein the connection slot is symmetric with symmetric up and down chambers, and symmetric left and right chambers around the tongue; and

a second operational state when the plug is oppositely inserted into the connection slot with the at least one row of connection terminals of the plug facing the first surface of the tongue, the at least one row of connection terminals of the plug are electrically connected to the at least one row of first contacts, and the tongue is disposed within the connection slot, wherein the connection slot is symmetric with symmetric up and down chambers, and symmetric left and right chambers around the tongue.

**Defendants' Acts of Infringement**

34. Defendants have been making, selling, using, and offering for sale unlicensed products that include a USB-C or similar communication port that infringes the RE307 patent in violation of 35 U.S.C. § 271 ("Accused Products"). The Accused Products include mobile

phones, tablet computers, monitors, hard drives, charging accessories, and other devices that include at least one USB-C socket or interface or a socket or interface compatible with USB-C plugs, including the exemplary products identified in Exhibits A-1 through A-12.[1]

35. Defendants' acts of infringement include the design, development, manufacture, importation, offer for sale, sale, and use of Defendants' own lines of products—including Walmart's own "Onn" brand of electronic devices and accessories—and numerous products manufactured by others that Defendants import, distribute, offer for sale, sell, and use in this District, in Texas, and throughout the United States. The Accused Products include articles of commerce imported, distributed, offered for sale, sold, or used by Defendants that include at least one USB-C socket or interface or a socket or interface compatible with USB-C plugs that has the same or substantially similar characteristics and features.

36. The following products and product families comprise non-limiting examples of additional Accused Products currently available for sale at Walmart stores in this District or to consumers in this District through Walmart.com:

- Acer Aspire 16 AI
- Acer Aspire C24 All-in-One
- Acer Nitro 85
- Acer Nitro V
- Acer Portable Business Monitor
- Acer Predator Helios Neo 18 AI
- Acer Predator Orion 6000
- ASUS Ascent GX10
- ASUS B650EM MAX
- ASUS BE249CGN
- ASUS CM1402FM2ADS84F
- ASUS CM30 2-in-1
- ASUS CX3401FBADH586T
- ASUS ExpertCenter PN54
- ASUS HA2741A
- ASUS HA3281A
- ASUS MB166CV
- ASUS MB169CKZ
- ASUS MH2741A
- ASUS NUC 14 Pro AI
- ASUS NUC 15 Pro Plus
- ASUS Prime B840-PLUS WiFi

[1] KIWI has sued certain Samsung defendants in this Court in an earlier-filed action. *See generally KIWI Intellectual Assets Corp. v. Samsung Elecs. Co., Ltd.*, Case No. 2:25-cv-00811-JRG (E.D. Tex.). Nothing in this Complaint is directed at any infringement of the RE307 patent in any manner—whether direct or indirect—by any Samsung Defendant in the earlier-filed action, by any of its affiliates, or at any of their products.

- ASUS Prime X299-A II
- ASUS Pro SSI CEB
- ASUS Pro WS W680-ACE
- ASUS ProArt PA16USV
- ASUS ProArt PA24US
- ASUS ProArt PA278CGRV
- ASUS ProArt PA278CV
- ASUS ProArt PA279CRV
- ASUS ProArt PA279CV
- ASUS ProArt PA32DC
- ASUS ProArt PA32UCE
- ASUS ProArt PA32UCXR
- ASUS ProArt PA328CGV
- ASUS ProArt PA329CRV
- ASUS ROG Crosshair X870E
- ASUS ROG G700
- ASUS ROG Strix G16
- ASUS ROG Strix G18
- ASUS ROG Strix XG17AHP
- ASUS ROG Strix XG32UCWMG
- ASUS ROG Swift P27UCDM
- ASUS ROG Xbox Ally
- ASUS RT-BE58 Go Travel Router
- ASUS Thunderbolt EX-5
- ASUS TUF Gaming A15
- ASUS TUF Gaming A16
- ASUS TUF Gaming F16
- ASUS TUF Gaming Z790
- ASUS TUF T700
- ASUS TUF VG17AQ5AZ
- ASUS VA27ECPSN
- ASUS VA34VCPSR
- ASUS Vivobook 15
- ASUS Vivobook Go 15
- ASUS Vivobook S 16
- ASUS Vivobook X1404
- ASUS Vivobook X1607
- ASUS ZenBook 14
- ASUS ZenBook Duo UX8406
- ASUS ZenScreen Duo MQ149CD
- ASUS ZenScreen MB16ACE
- ASUS ZenScreen MB16ACV
- ASUS ZenScreen MB16AMTR
- ASUS ZenScreen MB166C
- ASUS ZenScreen MS32UC
- Dell 7050-SFF
- Dell DC14260
- Dell DC15250
- Dell DC15255
- Dell DC16251
- Dell ECS1250
- Dell EC24250
- Dell EC27250
- Dell Inspiron 14 5440
- Lenovo 14IRU10 83LL000GUS
- Lenovo IdeaCentre F0JX0005US
- Lenovo IdeaPad 1
- Lenovo IdeaPad 3i
- Lenovo IdeaPad 5
- Lenovo IdeaPad 5a
- Lenovo IdeaPad 5i
- Lenovo IdeaPad Slim 3
- Lenovo IdeaPad Slim 3i
- Lenovo IdeaPad Slim 3x
- Lenovo IdeaPad Slim 5
- Lenovo Idea Tab ZAFR0912US
- Lenovo Legion 5a
- Lenovo Legion 5i
- Lenovo Legion Go S
- Lenovo Legion T5
- Lenovo Legion T7
- Lenovo Tab 10.1
- Lenovo Tab One
- Lenovo ThinkBook 14 G5
- Lenovo ThinkBook 16 G9
- Lenovo ThinkCentre M70q
- Lenovo ThinkCentre M70s
- Lenovo ThinkCentre M75s
- Lenovo ThinkCentre M90q
- Lenovo ThinkCentre neo 50a
- Lenovo ThinkPad E14
- Lenovo ThinkPad P14s
- Lenovo ThinkPad T14
- Lenovo ThinkPad 21QR001QUS
- Lenovo ThinkStation P3
- Lenovo ThinkStation P3 Ultra
- Lenovo V14 G5
- Lenovo V15 G4

- Lenovo V15 G6
- LG 45GX950A-B
- LG UltraGear 34G630A-B
- LG XBOOM Go P2 Double Pack
- Motorola Moto Edge
- Motorola Moto G
- Motorola Moto G Play
- Motorola Moto G Power
- Motorola Moto G Stylus
- Motorola Moto Razr
- Motorola Solutions T605_H20
- Onn 7” Core Tablet
- Onn 8.1” Core Tablet
- Onn 10.4” Tablet Pro
- Onn 11” Core Tablet
- Onn 11” Tablet Pro
- Onn 4K Plus Streaming Device
- Onn 4K Pro Streaming Device
- Onn 20W USB-C Charger
- Onn 30W GaN Wall Charger
- Onn 32W Dual-Port Wall Charger
- Onn 62W USB-C/A Car Charger
- Onn 67W USB-C Wall Charger
- Onn 72W Multi-Port Wall Charger
- Onn 100W 7-in-1 USB-C Adapter
- Onn 5,000 mAh Power Bank
- Onn 10,000 mAh Power Bank
- Onn 20,000 mAh Power Bank
- Onn 100147048 Monitor
- Onn Dual Port Car Charger
- Onn GAN 100W Laptop Charger
- Onn Indoor Camera Wired
- Onn Small Rugged Speaker
- Onn Medium Rugged Speaker
- Onn Large Rugged Speaker
- Onn Mini Sticks Bluetooth Earbuds
- Onn Noise-Canceling Earphones
- Onn PC Wireless Headset
- Onn Rechargeable Wireless Mouse
- Onn True Wireless Earphones
- Onn USB Type C 3-in-1 Adapter
- Onn Wireless Gaming Headset
- Onn Wireless On-Ear Headphones
- Onn Wireless USB Car Adapter

37. Defendants have knowledge of the RE307 patent and their infringement thereof at least based on the service of this Complaint.

**First Claim for Relief**
**(Infringement of U.S. Patent No. RE50,307)**

38. KIWI reincorporates the preceding paragraphs as if fully set forth herein.

39. The RE307 patent includes 102 claims. Defendants directly infringe one or more of these claims without KIWI’s authorization by importing, manufacturing, using, offering for sale, and selling Accused Products since the issuance after reissue prosecution of the RE307 patent on February 18, 2025.

40. Defendants have been and are directly infringing, either literally or under the doctrine of equivalents, at least claim 34 of the RE307 patent by importing, manufacturing,

using, offering for sale, or selling Accused Products, including the exemplary products identified in Exhibits A-1 through A-12.

41. On information and belief, the identified Accused Products are representative of other Accused Products that include a socket or interface compatible with a USB-C plug in that they are substantially similar and infringe in substantially the same way. For example, on information and belief, other Accused Products include a similar socket or interface structure as the identified Accused Products that is compatible with USB-C plugs and provides the same or similar functionality in the same or similar manner.

42. At least as early as their knowledge of the RE307 patent, Defendants have indirectly infringed the RE307 patent by inducement in violation of 35 U.S.C. § 271(b). Defendants induce infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the RE307 patent with specific intent by Defendants' partners, distributors, and customers. Defendants specifically induce infringement of the RE307 patent by promoting or selling the Accused Products. On information and belief, Defendants' customers of the Accused Products also directly infringe the RE307 patent by using or assembling the Accused Products as instructed by Defendants or according to instructions furnished by Defendants, including instructions to connect the communication port (*e.g.*, a USB-C port) of the Accused Product to a corresponding cable, which in combination infringes one or more claims of the RE307 patent.

43. At least as early as their knowledge of the RE307 patent, Defendants also contribute to the infringement of the RE307 patent by others in violation of 35 U.S.C. § 271(c). Defendants knowingly provide Accused Products that, when configured by their customers, result in a system that directly infringes at least claim 34 of the RE307 patent. These Accused

Products have no substantial non-infringing uses or include one or more separate and distinct components especially made or adapted for use in infringement of the RE307 patent that are not staple articles or commodities of commerce suitable for substantial non-infringing use. In particular, each of the Accused Products includes a communication port (*e.g.*, a USB-C port) whose sole purpose is to connect with a corresponding cable (*e.g.*, a USB-C cable) for power supply, data communication, or other purposes. On information and belief, such communication ports serve no purpose and provide no functionality when they are not connected with a corresponding cable. Such combination infringes one or more claims of the RE307 patent.

44. Defendants' infringement of the RE307 patent has been and remains willful since Defendants' first knowledge of the RE307 patent.

45. To the extent applicable, KIWI has complied with the requirements of 35 U.S.C. § 287. Before filing this Complaint, neither KIWI nor any licensee of KIWI has made, offered for sale, sold, or imported into the United States any article covered by the RE307 patent.

46. KIWI may recover all available damages for Defendants' infringement of the RE307 patent under 35 U.S.C. § 284 in an amount not less than a reasonable royalty together with interest and costs as fixed by the Court.

## Prayer for Relief

KIWI asks the Court to find in its favor against Defendants and grant the following relief:

A. Enter judgment that one or more claims of the RE307 patent has been infringed by Defendants, either literally or under the doctrine of equivalents;

B. Declare the RE307 patent valid and enforceable;

C. Award damages in an amount to be proven at trial, but in no event less than a reasonable royalty, for Defendants' infringement occurring since February 18, 2025, including

entry of a judgment that Defendants account for and pay to KIWI all damages, including a reasonable royalty, and costs incurred by KIWI because of Defendants' infringing activities and other unlawful conduct, including an award of all increased damages to which KIWI is entitled under 35 U.S.C. § 284 since at least as early as Defendants' first actual or constructive knowledge of their infringement;

D. Declare this an exceptional case for at least Defendants' willful infringement and award KIWI its attorneys' fees and costs under 35 U.S.C. § 285;

E. Enter pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other unlawful conduct at the maximum allowable rate; and

F. Award any other relief the Court deems just and proper under the circumstances.

**Demand for Jury Trial**

KIWI demands a trial by jury for all triable claims under Fed. R. Civ. P. 38.

Respectfully submitted,

Dated: November 24, 2026

By: *Patrick A. Fitch*

Claire A. Henry
Texas State Bar No. 24053063
claire@millerfairhenry.com
**Miller Fair Henry PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: +1 (903) 757-6400

Patrick A. Fitch
Massachusetts Bar No. 672797
pfitch@princelobel.com
Matthew D. Vella (*pro hac vice forthcoming*)
Massachusetts Bar No. 314548
mvella@princelobel.com
**Prince Lobel Tye LLP**
One International Place, Suite 3700
Boston, Massachusetts 02110
Telephone: +1 (617) 456-8000

Steven R. Daniels
Texas State Bar No. 24025318
sdaniels@princelobel.com
**Prince Lobel Tye LLP**
500 West Fifth Street, Suite 1205
Austin, Texas 78701
Telephone: +1 (617) 456-8000

Robert R. Brunelli
Colorado State Bar No. 20070
rbrunelli@sheridanross.com
Scott R. Bialecki
Colorado State Bar No. 23103
sbialecki@sheridanross.com
Brian Boerman
Colorado State Bar No. 50834
bboerman@sheridanross.com
**Sheridan Ross P.C.**
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: +1 (303) 863-9700

*Counsel for Plaintiff*
*KIWI Intellectual Assets Corporation*